In the Matter of EFRISCH REALTY CORP., Appellant, *v.* HORTENSE W. GABEL, as City Rent and Rehabilitation Administrator, et al., Respondents.

First Department, November 30, 1965.

*Robert S. Fougner* of counsel (*McLaughlin, Fougner & Messing*, attorneys), for appellant.

*William E. Rosen* of counsel (*Beatrice Shainswit*, attorney), for Administrator, respondent.

*Per Curiam.* Appellant is the owner and landlord of an 18-building complex in Rego Park, Borough of Queens, containing 541 rent-controlled apartments. On November 9, 1962, the landlord filed an application with the District Rent Office for an increase in the maximum rent of the apartments pursuant to the "net annual return" provisions of the City Rent and Rehabilitation Law. Section Y51–5.0 of the city rent law (New York City Administrative Code, tit. Y) provides for the adjustment of maximum rents where the rental income from a property yields a net annual return of less than 6% of the valuation of the property.

In its application for rent increases, the landlord used as a test year its fiscal year of operations for the period July 1, 1961 to June 30, 1962. A comprehensive audit of the landlord's rental income and expenses was prepared by the Accounting Division of the City Rent and Rehabilitation Administration, and, pursuant to that audit, the District Rent Director ordered rent increases on August 29, 1963. Thereafter, pursuant to protests lodged by the landlord and tenants, the Administrator issued an order and opinion on February 15, 1965 granting in part the protest of the tenants and denying the protest of the landlord. The landlord was awarded an ultimate increase of $18,233.46 per annum, equal to 2.58% of rental income.

The landlord commenced an article 78 proceeding challenging the Administrator's auditing procedures. This appeal is from a judgment of Special Term upholding the determination of the Administrator.

The landlord objects to the amortization over a 20-year period of $17,615 expended for the installation of air-conditioner outlets, and claims that such expenditure should have been treated

in the same manner as the cost of a rewiring installation. On December 17, 1962, pursuant to subdivision c of section 33.1 of the Rent, Eviction and Rehabilitation Regulations, rent increases were ordered as to all apartments to compensate the landlord for electrical rewiring of the buildings. For the purposes of the rent increase application, the annual income to be derived from the rent increases due to the rewiring was offset by a commensurate expense in the same amount. That procedure was followed in consequence of the policy of the Administrator adopted in consonance with the decision of *Matter of Ralph Lloyd Corp.* (*Temporary State Housing Rent Comm.*) (N. Y. L. J., Oct. 4, 1957, p. 6, col. 7).

However, in the case of the installation of heavy duty air-conditioner outlets, a different procedure was adopted. The landlord received rent adjustments in a separate section 33.1 proceeding of $4,179 annually for the outlets. But, instead of following the same procedure as in the case of the rewiring, and allowing an offsetting annual expense of $4,179, the outlet cost was amortized over 20 years, thus recognizing an annual expense of only $880.75.

In our opinion there was no rational basis for treating the rewiring and outlet expenditures differently. They both represented a part of a program of rehabilitation and improvement in the buildings. The policy, to prevent prejudice in a " net annual return " proceeding to a landlord who realizes additional income from a major capital improvement on his property by allowing an annual charge equal to the annual rent increase until the cost has been fully amortized, is equally applicable to the outlets as to the rewiring. The Administrator's attempted distinction that the providing of the outlets was a " service " rather than a capital improvement is untenable. In the instant case, the expenses for rewiring and for outlets should have been treated in the same manner.

The landlord further assails the Administrator's determination because of the use of post " cut-off " date increases in earnings resulting from the 1963–64 reduction in insurance expense and the rejection of a post " cut-off " date increase in real estate taxes. The significance of the " cut-off " date — the date of filing of a rent increase application — has been discussed in the related business and commercial rent law fields. (See *Matter of Alibel Corp.* [*Compo Shoe*], 285 App. Div. 140; *Matter of Masonic & Asylum Fund* [*Liggett Drug Co.*], 1 N Y 2d 616.) We stated, per BREITEL, J., in the *Alibel* case (*supra*, p. 143): " the courts have almost invariably rejected the inclusion of post-petition changes in expenses or income which both

had accrued and arisen after the date of the petition." Appellant has a just grievance in complaining that although the Administrator adhered to the principle of the "cut-off" date with regard to the increased tax expense for the year 1963-64 of approximately $14,000, a contrary treatment was given to the 1963-64 reduction in insurance expense. The reduced premium in insurance was billed on June 11, 1963 — seven months after the "cut-off" date — and in no way represented a rebate or refund for a prior insurance payment. It constituted a new insurance cost for the year 1963-64. Hence, the decrease in insurance premium obligation was not one fixed in amount as of the date of the filing of the petition, nor contemplated at that time. The decrease was both prospective in its inception as well as in effect, and, under the doctrine of the *Alibel* case, should not have been considered upon the landlord's application for a rent increase.

But it is unnecessary to predicate a rejection of the Administrator's treatment of the saving in insurance premium solely on a disagreement with its improper use as a post-petition item. More cogent is the rejection of that item because the Administrator failed to give consistent treatment to the tax increase and the insurance provision saving. Unquestionably, the Administrator has a broad discretion in determining to what extent the "cut-off" date will be applied to income and expenses. However, where the "cut-off" date is disregarded, the Administrator should consider not only increases in income but also any additional expenses. There should be a bilateral consideration to changes in income and expense as of the later date. A one-way street treatment of considering the saving in insurance while rejecting the real estate tax increase from consideration must be held to be arbitrary. (See *Matter of Streg* v. *Herman*, 41 Misc 2d 777.)

The landlord complains about the action of the Administrator in substituting an estimate of income from on-premises coin machines instead of giving effect to an agreement between the landlord and the concessionaire pursuant to which the concessionaire paid the landlord 10% of all collections and receipts from machines in the basement. In essence, the Administrator considered that because the president of the landlord corporation was the brother-in-law of the president of the concessionaire, the 10% arrangement disadvantaged the position of the tenants. Perhaps the Administrator was justified in viewing the arrangement with suspicion. But in the absence of proof that the relationship between the brothers-in-law had affected the amount of income, and that the collections and the income

received by the landlord were lower in comparison with other similar properties and, in view of the failure to afford the landlord an opportunity to submit evidence in rebuttal of the Administrator's method of determining a reasonable estimate for the claimed understated income, there must be a reconsideration of this item upon the remand ordered herewith.

Finally, there should be a reconsideration of the amount allowed for accounting expenses. Essentially, the complaint about the allowance of only $600 rests upon appellant's claim that there was an inadvertent error in the petitioner's application. Upon remand, appellant should be permitted to show that two separate sets of accountants were used to handle the landlord's books and its income tax work. Appellant now claims that $1,500 was paid for handling the books while $1,200 per annum was paid for income tax work. Upon proof of those facts, the Administrator should reconsider the proper amount to be allowed for accounting expenses.

The judgment entered May 3, 1965 should be reversed on the law, without costs or disbursements, the determination of the City Rent Administrator annulled and the matter remanded to the Administrator for reconsideration not inconsistent with this opinion.

RABIN, J. P., VALENTE, STEVENS, STEUER and STALEY, JJ., concur.

Judgment unanimously reversed, on the law, without costs and without disbursements, the determination of the City Rent Administrator annulled and the matter remanded to the Administrator for reconsideration not inconsistent with the opinion *Per Curiam* filed herein.